UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

MARCUS TELESFORD,

                        Plaintiff,

            v.

ANTHONY ANNUCCI; et al.,

                        Defendants.

9:15-CV-1241
(MAD/DJS)

_____

APPEARANCES:

MARCUS TELESFORD
02-A-0506
Plaintiff, pro se
Upstate Correctional Facility
P.O. Box 2001
Malone, NY 12953

MAE A. D'AGOSTINO
United States District Judge

# DECISION and ORDER

**I.    INTRODUCTION**

Plaintiff Marcus Telesford filed this action pro se asserting claims for violations of his constitutional rights arising out of his confinement at Great Meadow Correctional Facility ("Great Meadow C.F.") in 2015. Dkt. No. 1 ("Compl.").

Upon review of the complaint in accordance with 28 U.S.C. § 1915(e) and 28 U.S.C. § 1915A(b), this Court found that the complaint was subject to dismissal for failure to state a claim upon which relief may be granted. Dkt. No. 4 ("January Order") at 13. Plaintiff was afforded the opportunity to present an amended complaint if he wished to avoid dismissal of

this action. *Id.*[1]

Plaintiff's amended complaint is before this Court for review. *See* Dkt. No. 5 ("Am. Compl.").

## II. DISCUSSION

In his original complaint, plaintiff alleged that upon his assignment to F-block, he discovered that there were two "video surveillance cameras" located in front of the shower area which could "view and record plaintiff naked coming in and out of the showers." Compl. at 3. Plaintiff complained to defendants Sgt. Bascue, Captain Goodman, Deputy Supt. Eastman, First Deputy Supt. Brandon, and Supt. Miller that the cameras constituted a "violation to his First, Fourth and Fourteenth Amendment constitutional rights," and asked that the cameras be turned off. *Id.* at 4-6.[2] Plaintiff also sent DOCCS Acting Commissioner Annucci a "Section 75 Civil Service complaint" regarding the alleged misconduct by his subordinates. *Id.* at 6-7.[3] Despite having brought this matter to defendants' attention "verbally countless times," no action was taken. *Id.* at 7.

Upon review, the Court found that plaintiff's claims that the cameras violated his First Amendment religious rights, constituted an invasion of privacy in violation of the Fourth Amendment, and that he was denied Equal Protection were not supported by factual allegations sufficient to plausibly suggest that his constitutional rights were violated. January

---

[1] Plaintiff was also granted leave to proceed with this action in forma pauperis. January Order at 12.

[2] Plaintiff did not provide the dates of any of these encounters and described them in nearly identical terms. *See* Compl. at 4-6. Plaintiff appears to have followed the chain of command in expressing his concerns. *Id.*

[3] Plaintiff stated that he filed a grievance about his claim and referenced the "attached exhibits." Compl. at 11. As plaintiff was advised in the January Order no exhibits were received by the Clerk for filing. January Order at 5 n.5.

Order at 5-11. In so ruling, the Court noted that plaintiff did not support his First Amendment free exercise claim with "any facts regarding his religious beliefs and practices;" failed to allege facts sufficient to plausibly suggest that the video surveillance described was unduly intrusive or otherwise improper; and set forth his Fourteenth Amendment Equal Protection claim in wholly conclusory terms. *Id.*

In his amended complaint, plaintiff states that two video surveillance cameras "facing down on the entrance of the showers" in F-block were able to view plaintiff "taking off his clothes, going in the shower and coming out the shower naked drying off with a towel taking care of his personal hygiene." Am. Compl. at 4.[4] As alleged:

> When prisoners go into the shower, a gate locks and secures a prisoner into the shower area. Then a correction officer is in a bubble station behind a plexi-glass window that can see the prisoner from his desk for security reasons. Then there's a television monitor inside the bubble station the correction officer can see the prisoner from the cameras that's directly facing the shower area. Camera numbers 32 & 33. So there's no need to have videotape recording of the plaintiff naked coming in and out of the shower naked.

*Id.* at 5-6; *see also id.* at 7-8; 9-10; 11-12.[5] Plaintiff complained to all of the defendants that the "video tape recording" subjected him to "calculated sexual harassment that[']s unrelated to prison needs" and asked that the cameras be turned off while he was in the shower area.

---

[4] Plaintiff submitted affidavits from nine inmates, each of whom attests (in nearly identical terms) that he "witnessed video surveillance cameras that record viewing prisoners coming in and out the showers." Dkt. No. 5-1 ("Exs.") at 20-29. Only one inmate states that the inmates are observed while dressing and undressing. *Id.* at 29.

[5] Cameras 32 and 33 are identified as the cameras which monitor and also "record" inmates in the shower area. Am. Compl. at 14.

*Id.*[6] Plaintiff also objects to the fact that there were "video cameras that record" in F-block, but not in B-block (also a special housing unit). *Id.* at 6, 8.

In response to his grievance regarding the video-surveillance, plaintiff was advised that his concerns were "moot" because there were "no cameras in the shower area." Am. Compl. at 13; *see* Exs. at 16 ("cameras are monitoring the company area so staff escorting inmates to and from the shower area is under surveillance, however, none of those cameras are placed in an area where inmates are monitored while showering or naked.").[7] Plaintiff appealed the grievance response to Supt. Miller, who advised that "Video surveillance in the SHU area does not monitor inside the shower area." Exs. at 17.[8] The Central Office Review Committee also advised that "SHU video cameras do not monitor inside of the shower area, and that an inmate is required to wear boxer shorts with a towel wrapped around his waist when he is escorted to and from the shower." Exs. at 19.

Based upon these allegations, plaintiff claims in the amended complaint that the video-recording constituted an unlawful invasion of privacy and cruel and unusual punishment in violation of his rights protected under the Fourth and Eighth Amendments, and that he was

---

[6] As he did in his original complaint, plaintiff makes virtually identical allegations against each defendant. *See* Am. Compl. at 5-11. Plaintiff submitted affidavits from twelve inmates, each of whom attests to the fact that plaintiff complained to defendants about the cameras and asked that they be turned off when he (plaintiff) was in the shower area. Exs. at 1-13.

[7] The grievance, entitled "Box cameras and shower" was filed by plaintiff and four other inmates. Exs. at 17.

[8] On June 16, 2015, plaintiff filed a FOIL request for the June 15, 2014 "audio tape recording" from the SHU shower area. Exs. at 31. The response stated that disclosure would be an invasion of privacy and also indicated that the request could not be properly responded to because it was "vague." *Id.* at 32. Plaintiff was directed to provide more information. *Id.* Plaintiff does not indicate that he pursued this matter.

4

denied Equal Protection. Am. Compl. at 3.[9]  Plaintiff seeks an award of compensatory and punitive damages. *Id.* at 24-25.

As discussed in the January Order, the Supreme Court has stated that "[a] right of privacy in traditional Fourth Amendment terms is fundamentally incompatible with the close and continual surveillance of inmates and their cells required to ensure institutional security and internal order." January Order at 9 (quoting *Hudson v. Palmer*, 468 U.S. 517, 527-28 (1984)). Rather, inmates retain only a "limited right" to bodily privacy under the Fourth Amendment. *See Harris v. Miller*, No. 14-1957, 2016 WL 963904, at *40 (2d Cir. Mar. 15, 2016). In addition, intrusions on an inmate's bodily privacy which may be properly characterized as "calculated harassment unrelated to prison needs" may give rise to cognizable Eighth Amendment claims of cruel and unusual punishment. *Hudson*, 468 U.S. at 530.[10]

Upon review, and with due regard for plaintiff's status as a pro se litigant, the Court finds that he has not alleged facts in the amended complaint which, if proven, might sustain a claim against one or more of the defendants for the violation of his rights protected under the Fourth or Eighth Amendment. While plaintiff complains in the amended complaint that the video cameras could record him while he was "drying off and performing personal hygiene," he does not deny that he had access to a towel and boxer shorts, both of which afford bodily privacy. Moreover, plaintiff makes no objection to the fact that inmates in the F-block shower

---

[9] The First Amendment free exercise of religion claim set forth in the original complaint is not realleged in the amended complaint.

[10] In *Johnson v. Phelan*, 69 F.3d 144, 146-47 (7th Cir. 1995), the Seventh Circuit Court of Appeals concluded that a plaintiff's claim that male prisoners are entitled to prevent female guards from watching them while undressed did not present the sort of claim that *Hudson* holds in reserve.

5

area are monitored directly by corrections staff in the "bubble station." Significantly, plaintiff does not complain that the he was subject to observation by female corrections staff or that he was subjected to prolonged, or otherwise intrusive observation. Rather, plaintiff takes exception to video recording, which he summarily declares to be "calculated sexual harassment" and "moral[ly] degrading." Am. Compl. at 17-16.[11] These allegations are not sufficient to plausibly suggest that the use of video cameras as described in the amended complaint gave rise to cognizable claims for the violation of plaintiff's limited right to privacy or his right to be free from cruel and unusual punishment.

The Court has also considered whether the amended complaint sets forth a claim for denial of equal protection which survives sua sponte review and concludes that it does not. As discussed in the January Order, a plaintiff generally must allege "purposeful discrimination . . . directed at an identifiable or suspect class" or, in the alternative, a plaintiff must allege that he has been intentionally treated differently from others similarly situated, with no rational basis for the difference in treatment. January Order at 11 (citations omitted).

Plaintiff reasserts his Equal Protection claim in his amended complaint. In this pleading, in addition to claiming that video surveillance was not used on the B-block at Great Meadow C.F., plaintiff states that "no special housing unit in New York State of Department Corrections besides Great Meadow Corr. Fac. F-block has video surveillance that record viewing prisoners coming in and out the shower naked." Am. Compl. at 7.

The Court has reviewed plaintiff's amended complaint thoroughly and with due regard for his status as a pro se litigant. On the basis of that review, the Court finds that plaintiff has

---

[11] Plaintiff does not allege that the video recordings were used for any improper purpose.

not cured the deficiencies identified in the January Order.  The facts alleged do not plausibly suggest that inmates housed on a particular unit constitute a protected classification or, as discussed above, that the conduct complained of was in any way unlawful.  As a result, plaintiff's Equal Protection claim does not survive this Court's review in accordance with 28 U.S.C. § 1915(e)(2)(B)(ii) and 28 U.S.C. § 1915A(b)(1).

## III.     CONCLUSION

**WHEREFORE**, it is hereby

**ORDERED** that the amended complaint fails to state a claim for the violation of plaintiff's constitutional rights upon which this Court may grant relief against the named defendants and this action is **DISMISSED** in accordance with 28 U.S.C. § 1915(e)(2)(B)(ii) and 28 U.S.C. § 1915A(b); and it is further

**ORDERED** that the Clerk shall serve a copy of this Decision and Order on plaintiff.

**IT IS SO ORDERED.**

Dated: March 29, 2016
      Albany, NY

_____
Mae A. D'Agostino
U.S. District Judge